

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ENTERED
09/09/2016

| | | |
|---|---|---|
| IN RE: | § | |
| VICKY GRIBBLE WRIGHT; aka VICKY L | § | CASE NO: 13-10472 |
| WRIGHT; aka VICKY  WRIGHT; fdba | § | |
| VICKY WRIGHT/BORDERS | § | |
| CONTRACTORS INC. | § | |
|     Debtor | § | |
| | § | CHAPTER  13 |

**MEMORANDUM OPINION**
**<u>REGARDING JAMES P. GRISSOM'S ABILITY TO PAY SANCTIONS</u>**
[***Regarding ECF No. 175 and 177***]

## I. INTRODUCTION

In this Court's previous Interim Order Finding James P. Grissom in Civil Contempt of Court, it was noted that the matter of James P. Grissom's ("***Grissom***") ability, or alternatively inability, to pay the sanctions previously ordered by this Court was taken under advisement. [ECF No. 177 at 2] (the "***Interim Order***").  This Court now considers the matter based on the pleadings filed, the testimony at the prior hearing, all other evidence in the record, and relevant case law, and determines that Grissom failed to meet the burden of showing an inability to pay the Court's ordered sanctions.  Therefore, Grissom must pay, in one manner or another, the civil sanctions ordered by this Court.

## II.  FINDINGS OF FACT

This Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rules of Bankruptcy Procedure 7052, which incorporates Fed. R. Civ. P. 52, and 9014. To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such.  To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.  This Court made certain oral findings and conclusions on the record. This Memorandum Opinion

supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

Vicky Wright ("***Debtor***") filed her initial petition on October 31, 2013 and this Court confirmed the Debtor's Plan of Reorganization on November 6, 2014. [Case No. 13-10472, ECF Nos. 1, 66]; *see also* [ECF No. 54] (the "***Plan***"). Debtor previously filed a chapter 7 bankruptcy, wherein Debtor employed Grissom, post-discharge, to pursue matters concerning her ownership of API Pipe & Supply, LLC. [Case No. 11-10483, ECF Nos. 17, 40]. The resolution of those matters is the subject of this Court's Memorandum Opinion approving the chapter 7 trustee's settlement with API Pipe & Supply, LLC. [Case No. 13-10472, ECF No. 91]. The accompanying Order required Grissom to file a fee application, which he eventually did after being subject to a show cause order for failure to do so. *See generally* [ECF Nos. 98, 107, 114]; *see also* [ECF Nos. 101, 102, 105, 106]. *But see* [ECF No. 110] (mooting the show cause order as Grissom had filed the required fee application with an adequate explanation for the untimeliness).

This Court has written multiple orders in the present matter, which has been ongoing since May 2, 2016, when Debtor filed her Motion to Show Cause of James Grissom and Request for Emergency Hearing for Wednesday, May 4, 2016. [ECF No. 119] (the "***Show Cause Motion***"); *see also* [ECF No. 91] (holding that the chapter 7 trustee's settlement should be approved and ordering Grissom to file a fee application); [ECF No. 98] (requiring Grissom to show cause for his failure to timely file a fee application); [ECF No. 106] (striking multiple pleadings filed by Grissom for violating BLR 9013-1); [ECF No. 114] (granting Grissom's fee application for the amount of $90,000 and directing Grissom to remit additional amounts to the chapter 13 trustee); [ECF No. 120] (granting Debtor's Show Cause Motion and ordering Grissom

to pay $133,085.10 to the chapter 13 trustee, pursuant to [ECF No. 114], and setting a show cause hearing); [ECF No. 126] (ordering, for the reasons stated on the record at the May 4, 2016 show cause hearing, Grissom to remit $133,085.10 to the chapter 13 trustee by May 13, 2016); [ECF No. 138] (resetting a subsequent hearing because Grissom, who represented that he had retained an attorney, failed to appear, initially, and the retained attorney was not present with Grissom when he did appear); [ECF No. 141] (resetting the matter, and ordering that Grissom remit $2,000.00 to the chapter 13 trustee, produce the bank records for his IOLTA account, and enjoining Grissom from initiating transactions out of his IOLTA account without leave of court); [ECF No. 154] (granting Grissom's request for an extension of time to file the report on his IOLTA account; [ECF No. 158] (denying Grissom's *pro se* motion for a continuance of the reset hearing and requiring Grissom to personally appear); [ECF No. 159] (ordering, once again, Grissom to produce a check for the balance of the funds, or $131,085.10, owed the chapter 13 estate, continuing the matter to a full evidentiary hearing, and authorizing a 2004 deposition of Grissom); [ECF No. 162] (denying Grissom's motion to reconsider the order requiring Grissom to deposit $133,085.10 with the chapter 13 trustee); [ECF No. 175] (granting an Agreed Order wherein Grissom agreed to pay the outstanding $133,085.10 to Debtor's Counsel and assumed responsibility for and agreed to pay attorney's fees generated for this matter); [ECF No. 177] (finding Grissom in civil contempt of court for failure to follow this Court's orders).  For the purposes of this Memorandum Opinion, this Court adopts each of the Orders and any findings of fact therein and each is incorporated by reference into this Memorandum Opinion.  *See generally* [ECF Nos. 91, 98, 106, 114, 120, 126, 138, 141, 154, 158, 159, 162, 175, 177] (collectively, the "***Orders***").

On August 2, 2016, this Court conducted a full evidentiary hearing (the "***Hearing***") on

Grissom's compliance with certain orders issued by this Court and Grissom's inability to pay. At the Hearing, Grissom appeared with his counsel, Mr. Richard O. Habermann, and Debtor's Counsel, Mr. Abelardo Limon, also appeared. The Hearing was conducted in two phases: (1) whether Grissom was in contempt of court; and if so (2) whether Grissom had an inability to pay the amounts previously ordered by this Court.

1. <u>Introductory Matters:</u>

   a. Grissom's Counsel sought an extension through the afternoon in order for Grissom to conduct certain meetings that may generate funds.

   b. Grissom's Counsel also alleged that Grissom had not had any cash inflows since May, aside from a retainer received on a chapter 11 matter.

   c. Grissom's Counsel finally stated that inquiries had been made to the two attorneys that Grissom had paid in connection with Debtor's settlement, presumably as a referral fee. Although no evidence was introduced, Grissom represented to the court that that Mr. William A. Csabi had spent the $73,333.00 that had been received from Grissom on April 12, 2016. *See* [ECF No. 149-7 at 2]. However, the disposition of the funds remitted to Mr. Francisco J. Rodriguez on April 12, 2016 was undetermined as of the Hearing. *See also id.*

   d. Debtor's Counsel stated that he had made a written demand for the above referenced funds on both of the above referenced attorneys to no avail.

   e. Debtor's Counsel alleged that Grissom had failed to provide documentation requested at a previously conducted 2004 Deposition.

2. <u>Contempt of Court Phase of the Hearing:</u>

   a. The Court questioned Grissom's Counsel about compliance with certain orders issued

by this Court, specifically ECF Nos. 114, 120, 126, and 175, and required a response from Grissom's Counsel on each order.

b.  In response to each individual order, Grissom's Counsel stated Grissom had not complied with any of the orders.

c.  Thereafter, the Court asked if there was any reason why Grissom should not be held in contempt and Grissom's Counsel indicated that there was not a reason.

d.  Based upon those statements, this Court found Grissom to be in contempt of court for failing to comply with ECF Nos. 114, 120, 126, and 175.  *See also* [ECF No. 177] (reciting the aforementioned facts and analyzing whether Grissom was in civil contempt).

3.  Inability to Pay Phase of the Hearing

a.  *Grissom testified to the following:*

  i.  His law practice is based, generally speaking, on a pure contingency fee model, but occasionally he will take cases that are part flat fee and part contingency fee.

  ii.  He has not had any large cases with a settlement in the past four months, aside from the Debtor's state court case.

  iii.  His operating expenses run approximately $1,800.00 per month, plus the cost of a part-time assistant at $500.00 per week, which brings the total to $3,800.00 per month.

  iv.  He stated that his practice has not generated any significant revenues or anything approaching $133,085.10 in the past three months.

  v.  Recent matters and business development activities include:

    1.  an adoption case, which generated approximately $2,500.00 in a retainer plus

an additional $1,500 upon completion;

2.   a chapter 11 case, [Case No. 16-70247];

3.   Several hail storm damage cases, but only in the early stages; and

4.   Three transactional cases that could generate significant revenues going forward:  a $4,000,000 transaction that could generate $200,000 in fees, a $13,000,000 transaction that could generate $150,000 in fees, and a monthly purchasing transaction that could generate $65,000 per year for three years.

b.   *On Cross-Examination by Debtor's Counsel, Grissom testified on the following:*

   i.   Subpoena for Documents and 2004 Deposition:

   1.   Financial Account Statements were to be provided by July 5, 2016, to Debtor's Counsel's office, but Grissom stated that he provided what he had to his Counsel.

   2.   Grissom stated that he had not reviewed the transcript of the deposition when questioned whether he had.

   3.   Grissom stated that he does not have his tax returns, which had been requested, and copies of which were held by Grissom's tax preparer.  Grissom stated he attempted to contact his tax preparer since the 2004 deposition was taken in July, but had been unsuccessful in doing so.

   4.   Grissom provided a non-redacted copy of his IOLTA records to his Counsel. *See also* [ECF Nos. 141, 149].

   ii.   Chapter 11 case

   1.   Grissom received the retainer check, subsequently admitted an Exhibit A, on June 5, 2016, and still had the uncashed check on his person as of the Hearing.

2. Grissom stated that he had been working on some "other things" with the chapter 11 debtor, [Case No. 16-70247], and "had not gotten around to [depositing the $15,000 retainer check]."  Grissom further testified that he had not notified this Court that he was holding the check and had not filed a fee application in that bankruptcy case yet.  *See also* [Case No. 16-70247, ECF No. 24] (filing a fee application and stating that the retainer check had been returned for insufficient funds (NSF)).

3. Grissom further testified about the retainer for First Vista LLC's chapter 11 bankruptcy and what portion had been earned, but he did not know, at the Hearing, exactly how much he had earned.  Grissom did state that he has attorney time records in the file on matters such as preparation of the petition and schedules, and their supporting documents.  *See also* [Case No. 16-70247, ECF No. 24-1] (providing billing records for time spent on the matter).  In Grissom's opinion, he believed that he had earned the entire $15,000 as of the date of the Hearing.

4. Debtor's Counsel questioned Grissom on a medical collection case that he had testified about at the deposition, but, while on the stand, Grissom could not recall that matter.

5. Grissom testified about his involvement with the Debtor's lawsuit against "Raza Development, [Inc.]," a matter in which he had been ordered by this Court to withdraw from representation of any of the parties in order to avoid a conflict of interest in the First Vista LLC case.  *See* [Case No. 16-70247, ECF No. 19].  Grissom stated withdrawal included waiving all fees from the case,

which was taken on contingency at 40% of any settlement.  Grissom did not disclose his interest in this case to this Court when he applied to be employed as counsel for First Vista LLC.

6.  Grissom testified that he had incurred expenses for ordering records from the Secretary of State, such as the filing of corporate records and verified ownership.  Grissom also incurred expenses for ordering records from the Comptroller's Office, which included a certificate of good standing.  At best, Grissom thought it might have cost $1,250.00 in expenses for records, plus the filing fee for First Vista LLC's bankruptcy.

iii.  Other Deals and Projects

1.  Grissom testified that he was working on a hospital purchase-sale agreement and had already earned "six figures."  He further stated that he had not been paid anything, but anticipated being paid when the hospital deal closed in "mid-September."  Grissom stated that the deal is presently at the funding stage and organizing the buyers.  While there was not presently a purchase-sale contract or an agreement on a sales price, a copy of a written offer was in Grissom's possession.

2.  Grissom testified about a franchise agreement for an assisted living facility that was being developed for which he would represent the franchisee.  The deal was presently approximately 60 days old and Grissom was gathering the information necessary to structure the deal.  There are presently no franchisors as it is only a concept where the franchisor would provide management and accounting support and the franchisee would be responsible for purchasing the

property.  Grissom believed that he would recoup "mid five figures" in the next 60 to 90 days.  Grissom also possessed marketing analysis on the concept, but only in bullet-point form.

3.  Grissom represents "Mex Gas" in a purchasing agreement where they will be buying natural gas from suppliers in the United States.  Grissom will be setting up the purchase-sale agreements and setting up the organizational structure for the purchase.  Grissom would be paid on contingency, which amounts to 1% of the spread of the natural gas transaction.  Grissom stated he had been working on the deal for approximately a year and presently has a supplier lined up through a broker.  Grissom stated that "Mex Gas" had the necessary federal and state permits required to conduct the transactions, but that he had no access to them.  Grissom stated he expected to receive about $65,000 per month once the transaction closes, but there is not a close date at present.

4.  Grissom testified about certain hail damage cases, which he revised from approximately 25, as of the date of the deposition, to approximately 10 at present.  Grissom stated that he refers them to Michael Moore, an attorney in McAllen, Texas, and receives 30% of attorney's fees as a referral fee, per a written agreement with Mr. Moore.  Grissom testified that he did not know the status of the referred cases and does not receive regular updates as to the status.

5.  Grissom discussed a case involving a "Dr. Zamora" from Edinburg, Texas, and, from which, Grissom expected to receive $6,000 in legal fees from work

he performed on a case which involved the domestication of a foreign judgment against "Dr. Zamora." *See generally* [Case No. 16-7020].  Grissom has submitted an invoice to "Dr. Zamora" in the matter during the first week of July, but has not received a payment or otherwise followed up on the invoice.

6. Grissom further testified that he does not keep a list of accounts receivable because "not that many people owe [him] money."  Grissom stated that the only receivable that he could think of was "Dr. Zamora."

7. Grissom testified regarding a referral fee arrangement that he has with a Gabriela Martinez, a licensed adjuster based in McAllen, Texas.  Ms. Martinez works on adjusting property damage claims, such as storm claims.  Upon finding that a home has been damaged, Ms. Martinez will refer the case to Grissom for a 10% referral fee.  At present, Grissom stated that he does not owe Ms. Martinez anything.  Grissom estimated that he is referred two cases per month, which are then re-referred to Mr. Moore.  *See* Finding of Fact No. (3)(b)(iii)(4).

8. Grissom testified about several of his business associates:

   a.  "Rene Perez of Coastal Planes LLC"

      i.  Grissom stated that they typically discuss business opportunities and at present they are working on the purchase-sale of a ranch near Rio Grande City, Texas.  Grissom is performing the legal work related to the transaction and will earn 8% of the selling price.  Grissom stated that the Appraisal District had recently valued the property at

approximately $125,000.  Grissom stated that the desired closing for the sale is in late September, but there is currently not a written agreement between the parties.

b.  Dan Flores of First Vista Investments

i.  Grissom testified that they are working on certain real estate deals, including one that includes a residential project of more than 10 units. Grissom stated he would be a participant in the project, but his participation is presently undecided.  Grissom intends to request 25% participation, but the project is at the concept stage and no income is anticipated in the next three to six months.

c.  "Rene Elizondo"

i.  Grissom testified that they primarily consult on "land opportunities" and there is not a written agreement between the parties.  Grissom stated that he did not anticipate being a participant unless an opportunity presents itself.

d.  "Stan Bates"

i.  Grissom testified that Mr. Bates is a trader in San Antonio, Texas and trades in oil and gas delivery.  Grissom stated he is not presently involved in any of his transactions and has no written transactions to that effect.

iv.  Adoption Case

1.  Grissom stated that he was paid $2,500.00 as a retainer for the case and had been deposited into Grissom's operating account, as of the time of the

Hearing, but was not yet available as it had not cleared. Grissom subsequently testified that the check had been deposited into his personal bank account, not his operating account.

2. Grissom testified that an additional $1,500.00 would be paid upon completion of the adoption. Grissom stated he thought that the adoption could be completed in three to four months, depending on acceptance by out-of-state regulatory authorities.

v. IOLTA Account

1. Grissom testified that his IOLTA account contained approximately $7,000.00 and represented earned income from state court cases that had not yet been transferred from his IOLTA account.

vi. Grissom's Personal or Community Property Assets

1. Grissom confirmed that he presently has a 1976 motor home, estimated value of $2,500, a 1991 Mercury Capri, estimated value of $2,500, a 2003 Alero, estimated value of $1,000, a 2010 Honda Accord, estimated value of $10,000, and a 2009 Nissan Cube, estimated value of $7,000. Aside from the 2010 Honda Accord, which has a lien held by BBVA Compass, his vehicles are owned free and clear of any liens according to Grissom.

2. Grissom testified that he owns three life insurance policies and none have any cash surrender value, and that the primary purpose was as a burial policy.

3. Grissom stated that he receives a pension from "Valero Energy" and he believes it to be $100.35 per month. Evidence of which had been provided to Grissom's Counsel. Grissom's spouse's retirement income is $120.00 per

month from her employment with "Wyatt's Cafeteria."  Grissom stated he does not have any records of these payments nor the Wells Fargo account into which they are deposited as the account is independently owned by his spouse.  When asked about his spouse's income from the State, Grissom stated that he did not have any information on such income.  Grissom's Counsel objected to inquiries into Grissom's spouse's income, but his objection was overruled because Grissom possesses a community property interest and the amounts received are relevant to the inquiry at bar.

4.  Grissom testified that his personal bank account had approximately $600.00, excluding the check from his adoption case.

4.  <u>Evidence Admitted:</u>

a.  Exhibit A:  A check for $15,000.00 from J&R Development for the First Vista LLC chapter 11 bankruptcy case.

### III.  LEGAL STANDARD

When a party has been sanctioned for civil contempt, the contemnor may assert a defense alleging their inability to comply with or pay the sanctions.  *S.E.C. v. AMX, Int'l, Inc.*, 7 F.3d 71, 73 (5th Cir. 1993) (citing to *Donovan v. Sovereign Sec., Ltd.*, 726 F.2d 55, 59 (2d Cir. 1984)).  The Fifth Circuit cases of *Hodgson v. Hotard* and *S.E.C. v. Huffman* are instructive.  436 F.2d 1110 (5th Cir. 1971); 996 F.2d 800 (5th Cir. 1993).  The burden of establishing an inability to pay, as is the relevant compliance here, is upon the contemnor by electing to use the defense.  *Hodgson*, 436 F.2d at 1115; *see also Huffman*, 996 F.2d at 803; *c.f. In re White-Robinson*, 777 F.3d 792, 798 (5th Cir. 2015) (discussing the standard for an inability-to-pay defense); *AMX, Int'l, Inc.*, 7 F.3d at 73.  In the Fifth Circuit, the standard of proof employed in evaluating an

inability-to-pay defense is a preponderance of the evidence standard. *Huffman*, 996 F.2d at 803 (discussing the standard set forth in *Hodgson*, 436 F.2d at 1115, as not being "more-than-preponderance," but rather just by a preponderance). The preponderance of the evidence standard is one where the evidence must demonstrate that it is "more likely than not." *Matter of Biscoe Enter., Ltd., II*, 994 F.2d 1160, 1164 (5th Cir. 1993) (citing to *In re Winship*, 397 U.S. 358, 371 (1970) (Harlan, J., concurring)). Therefore, the contemnor seeking to demonstrate an inability to pay (or comply with) sanctions must demonstrate such an inability by putting forth evidence that shows it is more likely than not that they cannot pay (or comply with) the sanctions. *Huffman*, 996 F.2d at 803; *Matter of Biscoe Enter., Ltd., II*, 994 F.2d at 1164.

## IV. CONCLUSIONS OF LAW

### A. Jurisdiction & Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter. 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012). This is a core matter as it "concern[s] the administration of the estate." § 157(b)(2); *In re White-Robinson*, 777 F.3d at 796 (holding that finding a party in civil contempt is a core proceeding); s*ee also In Re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999).[1]

This Court may only hear a case in which venue is proper. 28 U.S.C. § 1408. In its petition, Debtor's principal place of residence is Rio Hondo, Texas; and Grissom's principal place of business is McAllen, Texas. Therefore, venue is proper.

---

[1] "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."

**B. Constitutional Authority To Enter A Final Order**

This Court has an independent duty to evaluate whether it has the constitutional authority to sign a final order. *Stern v. Marshall*, 131 S. Ct. 2594 (2011). *But see Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015) (holding that parties may consent to jurisdiction on non-core matters). The instant matter regards sanctions for Grissom's conduct, which this Court has already found to be civil contempt in its Interim Order, and Grissom's ability to pay. *See* [Case No. 13-10472, ECF No. 177). The Fifth Circuit in *In re White-Robinson* held that a bankruptcy court exercises full judicial power in core proceedings, of which a hearing on civil contempt for failure of a party to "follow a bankruptcy court's valid and binding orders" is a core proceeding as it "would have no existence outside of the bankruptcy proceeding." 777 F.3d at 795 (internal quotations omitted). The Fifth Circuit has also stated that bankruptcy courts may issue orders sanctioning a party for civil contempt, as is the case here, but not for criminal contempt. *In re Bradley*, 588 F.3d 254, 266-67 (5th Cir. 2009). Therefore, this Court holds constitutional authority to enter a final order and judgment with respect to the core matter at bar.

**C. Analysis of Grissom's Inability to Pay**

Following the Hearing, this Court issued its Interim Order holding Grissom in civil contempt, and, in conformity with its prior actions, this Court issued orders requiring Grissom to undertaken certain actions to begin repaying the funds due Debtor's chapter 13 estate. *See generally* [ECF No. 177]; *see also* [ECF Nos. 96, 114, 120, 126]. In addition to the funds stemming from Debtor's settlement, Grissom voluntarily entered into an agreement to pay costs for Debtor's prosecution of the instant matter, which this Court granted. [ECF Nos. 174-175]. All totaled, Grissom owed $133,085.10, less the $2,000.00 already paid to the chapter 13 trustee thus leaving a remaining balance of $131,085.10, to the chapter 13 estate and a minimum of

$7,995.90 for attorney's fees, costs, and expenses due to his agreement with the Debtor. *See* [ECF Nos. 159, 174-175].

At the Hearing, Grissom provided testimony on the litany of deals and projects that he is currently working on, his own personal and community property assets, and expenses he incurs in operating his law practice. Given the nature of the testimony provided, this Court finds that Grissom was a somewhat credible witness as there was a high degree of uncertainty, which was not aided by his seeming lack of preparation and documentation as to any of the items he testified about, except for the chapter 11 retainer check. That being said, this Court does have a very grave concern about how Grissom is funding his operations and whether he has been fully forthcoming in divulging all of his assets. The expenses Grissom states he generally pays on a monthly basis is somewhere from $1,800 to $3,800, depending on whether Grissom utilizes his assistant. A significant part of Grissom's Counsel's arguments at the Hearing was predicated on Grissom having not earned any significant income in the recent past. If that is true, which is partially confirmed by the report filed by Grissom, then how is Grissom funding his operations? His testimony was that he had minimal personal assets, no retirement savings, and no cash value in his life insurance policies. Grissom's testimony also portrays him as having a propensity of playing fast and loose in his treatment of incoming client funds by seemingly failing to deposit them in his IOLTA account, comingling client funds, and holding a retainer check[2] for extended periods of time.

As of the Hearing, Grissom was currently working on three separate transactional matters, each of which possesses the potential revenue streams sufficient to allow the Debtor to recoup the amounts owed her chapter 13 estate. *See* Findings of Fact No. 3(b)(iii)(1-8).

---

[2] According to the Application for Payment of Attorney['s] Fees, [Case No. 16-70247, ECF No. 24], the retainer check was returned for insufficient funds.

Furthermore, Grissom is presently counsel in a chapter 11 case, in which he testified that he performed services worth $15,000, and an adoption case, in which the total fee was $4,000 with $2,500 having already been paid for work done in the case.  *See* Findings of Fact No. 3(b)(iii). Grissom additionally testified about five vehicles that he owns for a total value of $23,000 less the lien on one of the vehicles.  Grissom currently derives approximately $100 per month from a pension and, aside from the amounts held in his IOLTA account, did not have any other significant income or assets.  Grissom's other side ventures seemed far more speculative in nature and less likely for Grissom to earn income from.  *See* Findings of Fact No. 3(b)(iii)(8)(a-d).

Cumulatively, the sum total of all of potential income from his deals, projects, and activities, and the assets available to Grissom amounts to several multiples of what he has been ordered to pay.  Thus, as Grissom carried the burden to demonstrate his inability to pay, the evidence presented at the Hearing woefully fails to persuade this Court that he possesses an inability to pay.  In fact, it is far more credible that he, more likely than not, has an ability to pay. *Huffman*, 996 F.2d at 803; *Matter of Briscoe Enter., Ltd., II*, 994 F.2d at 1164.

Therefore, this Court finds that Grissom has failed to meet the burden of demonstrating that he, more likely than not, does not possess the financial ability to pay.

**D.  Restoration of Debtor's Chapter 13 Estate**

As this Court has found that Grissom has an ability to pay, this Court further finds that he should either pay it in full as soon as practicable or make monthly payments against the outstanding amount ordered to be paid until it is paid in full but prior to plan completion.  *See, e.g.*, [ECF Nos. 159, 175].  Debtor filed her initial petition on October 31, 2013.  [ECF No. 1]. Debtor's Plan, as confirmed, calls for payments over 60 months.  [ECF No. 55 at 1]; *see also*

[ECF No. 66].  The term of the Plan is the maximum allowed by statute.  *See generally* 11 U.S.C. § 1322.  Therefore, restoring the amounts owed to Debtor's chapter 13 estate should be concluded by the 60th month, which ends on October 31, 2018, of Debtor's chapter 13 bankruptcy in accordance with the confirmed Plan.  Debtor, subsequent to the Hearing, filed an adversary proceeding seeking disgorgement of an unauthorized fee, for turnover of property of the estate and for violation of the automatic stay.  [Case No. 16-1004, ECF No. 1].  The outcome of the adversary proceeding, including to the extent that assets, if any, are recovered from the Defendants for the benefit of the Debtor's chapter 13 estate, may serve to offset or credit the amount that Grissom has been ordered to pay.  Therefore, this Court finds that, as Grissom has the ability to pay, he should pay the amount owed in full as soon as practicable or make a monthly payment[3] in each of the remaining 25 months of Debtor's chapter 13 bankruptcy, subject to adjustments, if any, depending on the outcome of the adversary proceeding, until the entire amount of $139,081.00, plus late fees and accrued interest[4] has been paid in full.  *See, e.g.*, [ECF Nos. 159, 175].  This Court further finds that, in order to properly ensure that the payments are made, Grissom should be required to produce semi-monthly financial reports, including properly redacted supporting documentation as set forth in this Court's accompanying order, discuss his income-generating activities for the prior period at all chapter 13 panel hearings, for both the McAllen and Brownsville Divisions, until such time as he has repaid the entire amount owed, and continued restriction and oversight of his financial accounts.

## V. CONCLUSION

---

[3] The outstanding amount owed is $131,085.10 plus $7,995.90, for a total of $139,081.00 per this Court's Order Continuing Hearing, [ECF No. 159] (noting the reduction from the initial amount of $133,085.10 by $2,000), and the Agreed Order to Pay Funds to the Estate and to Pay Attorney's Fees, [ECF No. 175], which when divided over the remaining months of Debtor's bankruptcy is $5,563.24 per month.  This amount does not include the additional payments Grissom has agreed to make for Debtor's late fees, accrued interest, and any other fees or expenses, nor does it include any further attorney's fees accrued in the instant matter since the above-referenced Order was agreed to by the parties.

[4] *See* [ECF No. 175 at 2].

Pending before the Court is a single matter, which began an extremely protracted series of show cause hearings into whether Grissom had complied with this Court's orders. The final hearing was held on August 2, 2016, wherein Grissom was held in civil contempt, and this Court heard arguments, testimony, and received evidence as to Grissom's inability to pay the amounts he was ordered to pay by this Court. Grissom provided significant testimony on his assets, cases, deals, and all manner of income generating opportunities. This Court found that the testimony by Grissom was halting, contradictory, and thus not highly credible. The burden placed on Grissom, as the party asserting the defense, is held to the preponderance of the evidence standard, which requires the party to prove their argument is more likely than not to be true. *Huffman*, 996 F.2d at 803; *Matter of Briscoe Enter., Ltd., II*, 994 F.2d at 1164.

Based on the foregoing, this Court finds that Grissom's testimony and the evidence admitted fails to meet that burden and, in fact, demonstrates that Grissom does have an ability to pay, either in full or in semi-monthly installments.

Furthermore, this Court finds that Grissom should provide reports to this Court as to his financial and income-generating activities and make regular semi-monthly payments of no less than $2,781.62 (in good and sufficient funds), or demonstrate by a preponderance of the evidence that he cannot do so, at each chapter 13 panel held in the Brownsville and McAllen Divisions until such time as restoration has been fully made, but no later than the 60th month of Debtor's bankruptcy. Moreover, Grissom shall pay greater amounts upon having sufficient means to do so.

This Court further finds that it is appropriate to continue, and even expand, its oversight as to Grissom's financial accounts, both personal and professional, to ensure that Grissom complies with this Court's latest order.

An Order consistent with this Memorandum Opinion shall be entered on the docket.


SIGNED 09/09/2016.


_____
                Eduardo V. Rodriguez
           United States Bankruptcy Judge